**IT IS ORDERED as set forth below:**

**Date: April 01, 2010**

_____
Paul W. Bonapfel
U.S. Bankruptcy Court Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LAKE BURTON DEVELOPMENT, LLC; | ) | Case No. 09-22830 (PWB) |
| WATERFALL COUNTRY CLUB, LLC; and | ) | Case No. 10-21133 (PWB) |
| WATERFALL WATER AND SEWER, INC. | ) | Case No. 10-21134 (PWB) |
| | ) | |
| Debtors. | ) | Joint Administration Proposed |
| | ) | |

ORDER (A) AUTHORIZING AND SCHEDULING
AN AUCTION AT WHICH THE DEBTORS WILL SOLICIT THE HIGHEST OR BEST
BID FOR THE SALE OF THEIR ASSETS; AND (B) APPROVING BID PROCEDURES
GOVERNING THE PROPOSED SALE, INCLUDING PAYMENT OF BREAKUP FEE

Upon consideration of the motion, dated March 17, 2010 (the "Motion"),[1] of Lake Burton Development, LLC, Waterfall Country Club, LLC and Waterfall Water and Sewer, Inc. (collectively, the "Debtors"), for entry of (i) following an initial, emergency hearing, an order approving a sale and bidding process as hereinafter described to be used in connection with the proposed sale of the assets (the "Assets") comprising the Debtors' golf course and recreation

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

complex operations and related real estate development business (the "Business"), and (ii) following a final hearing, an order approving the sale by the Debtors of the Assets to SELAF Waterfall Holding Co., LLC ("SELAF") or to the bidder submitting the highest or best bid for the Assets in connection with the sale and bidding process; and an interim hearing regarding the Motion having been held on March 30, 2010 (the "Bid Procedures Hearing"); and based upon all of the evidence proffered or adduced at the Bid Procedures Hearing; and after consideration of any memoranda, objections, or other pleadings filed in connection with the Bid Procedures Hearing; and after consideration of the arguments of counsel made at the Bid Procedures Hearing; and upon the entire record of these cases; and it appearing that the approval of the Bid Procedures as requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

      FOUND AND DETERMINED THAT:

      A.      The form and manner of notice of the Bid Procedures and the Bid Procedures Hearing shall be, and hereby are, approved as sufficient and adequate notice. No other or further notice in connection with the entry of this Order is or shall be required.

      B.      The Bid Procedures were proposed by the Debtors in good faith with the goal of maximizing the value of the Business and the Assets for the benefit of all creditors of their estates.

      C.      Approval of the Breakup Fee and entry of this Order is (i) a necessary and appropriate inducement to SELAF to (1) make an initial offer which will serve as a "floor" for further bidding, and (2) to negotiate and enter into the Agreement and consummate the

transactions contemplated thereby, and (ii) a condition precedent to closing the transactions contemplated by the Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted to the extent set forth in this Order. All objections to approval of the Bid Procedures (including the Breakup Fee) that are not addressed in this Order are hereby overruled. The following "Bid Procedures" are hereby approved and shall be used in connection with the proposed sale of the Assets:

   (i) Initial Overbid. Any third party (other than SELAF) that is interested in acquiring the Assets must submit an "Initial Overbid" in conformance with the Bid Procedures by not later than 5:00 p.m. local time in Atlanta, Georgia on April 9, 2010 (the "Overbid Deadline"). Any such Initial Overbid must:

      (a) Contain a signed definitive asset purchase agreement (together with a copy of the signed agreement that is marked to show changes from the Agreement) with, at a minimum, the following requirements: (i) having substantially identical terms and conditions as the Agreement, except with higher and better consideration; (ii) containing terms and conditions otherwise no less favorable to the Debtors' estates than the terms and conditions in the Agreement (provided that no Initial Overbid shall provide for the payment to the overbidder of any breakup fee, topping fee, expense reimbursement or other similar arrangement); (iii) provide for a cash purchase price equal to or greater than the sum of (1) $10,525,000.00, (2) the Breakup Fee (as defined below), and (3) $250,000; (iv) not be subject to any (1) financing contingency, (2) contingency relating to the completion of unperformed due diligence, (3) contingency relating to the approval of the overbidder's board of directors or other internal approvals or consents, or (4) any conditions precedent to the overbidder's obligation to purchase the Assets other than those included in the Agreement; and (v) provide that the overbidder shall purchase all or substantially all of the Assets; provided, however, an Initial Overbid shall not be required to include a consulting agreement with J.T. Williams, Jr. or a shoreline usage agreement (relating to the use of certain lakefront property at Lake Burton) and shall not be required to grant Messrs. J.T. Williams, Jr., John R. Williams, David K. Williams or Joseph T. Williams, III honorary memberships in the Club;

3

  (b) Include a cashiers' or certified check in the aggregate amount of the Deposit (i.e., $500,000), payable to an independent escrow agent to be designated by the Debtors (it being understood that deposits may also be sent by wire transfer of immediately available funds);

  (c) To the extent not previously provided to the Debtors, be accompanied by evidence satisfactory to the Debtors in their commercially reasonable discretion that the overbidder (i) is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under the Agreement (or its equivalent) in the event that it submits the Prevailing Bid (as defined below) at the Auction (as defined below), and (ii) has substantial community development, sales and management experience for projects that are substantially similar to the Business (including the Club and the Development (as such term is defined in the Agreement));

  (d) Remain open and irrevocable until ten days after the entry of an order by the Court approving a definitive agreement providing for the sale of the Assets; and

  (e) Be submitted to (i) Lake Burton Development, LLC, Waterfall Country Club, LLC and Waterfall Water and Sewer, Inc., 300 Lester Mill Road, Suite 110, Locust Grove, Georgia 30248, Attention: J. T. Williams, Jr. (Facsimile: (770) 389-2010), (ii) counsel to the Debtors, George M. Geeslin, Eight Piedmont Center, Suite 550, 3525 Piedmont Road, N.E., Atlanta, Georgia 30305-1565 (Facsimile: (404) 816-1108), (iii) counsel to SELAF, King & Spalding LLP, 1180 Peachtree Street, Atlanta, Georgia 30309, Attention: Paul Ferdinands, Esq. (Facsimile: (404) 572-5100), and (iv) Office of the U.S. Trustee, 362 Richard Russell Bldg., 75 Spring Street, SW, Atlanta, Georgia 30303, Attention: James H. Morawetz (Facsimile: (404) 331-4464), in each case so as to be received not later than the Overbid Deadline.

(ii) <u>Auction</u>.  In the event the Debtors timely receive a conforming Initial Overbid from a prospective purchaser as described above (a "Qualified Bidder"), then the Debtors will conduct an auction with respect to the sale of the Assets on April 12, 2010 beginning at 10:00 a.m. local time, at the offices of Debtors' counsel, George M. Geeslin, located at Eight Piedmont Center, Suite 550, 3525 Piedmont Road, N.E., Atlanta, Georgia 30305-1565, or at such other location as may be designated by the Debtors (the "Auction").  In order to participate in the Auction, each prospective purchaser shall be required to comply with the requirements of the Bid Procedures and to submit an Initial Overbid that is timely and that complies in all respects with this Order.  At the Auction, Qualified Bidders and SELAF (it being understood that SELAF shall be deemed to be a Qualified Bidder) may submit successive bids in increments of at least $250,000 greater than the prior bid for the purchase of the Assets until there is only one offer that

4

the Debtors determine (in the exercise of their reasonable discretion), subject to Court approval, is the highest or best offer for the Assets (the "Prevailing Bid"). When bidding at the Auction, SELAF shall receive a cash "credit" in the amount of the Breakup Fee. All bidding for the Assets will be concluded at the Auction and there will be no further bidding at the Sale Hearing. If no conforming Initial Overbid from a Qualified Bidder shall have been received at or prior to the Overbid Deadline, the Auction will not be held and the Sale Hearing will proceed with respect to the Agreement. In determining the Prevailing Bid, consideration will be given to, among other things: (a) the number, type and nature of any changes to the Agreement requested by each bidder; (b) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modifications or delay; (c) the total consideration to be received by the Debtors; (d) the likelihood of the bidder's ability to close a transaction and the timing thereof; (e) the net benefit to the Debtors' estates; and (f) the amount of the bidder's community development, sales and management experience for projects that are substantially similar to the Business (including the Club and the Development). At the Auction, SELAF shall have the right to (i) submit further bids along with a markup of the Agreement; and (ii) at any time, request that the Debtors announce, subject to any potential new bids, the then current Prevailing Bid and, to the extent SELAF requests, use reasonable efforts to clarify any and all questions SELAF may have regarding the Debtors' announcement of the then current Prevailing Bid. Only the persons who submitted Initial Overbids and SELAF may participate in the Auction. After the Auction has concluded, the Debtors shall present to the Court for consideration and approval at the Sale Hearing the Prevailing Bid.

(iii)  <u>Sale Hearing</u>. The Sale Hearing will be conducted at 10:00 a.m. local time, on April 13, 2010 at the United States Bankruptcy Court, Courtroom 1401, 75 Spring Street, S.W., Atlanta, Georgia 30303, at which time the Debtors intend to present the Prevailing Bid for approval by the Court pursuant to the provisions of Sections 105, 363(b), 363(f), 363(m), 363(n), and 365 of the Bankruptcy Code. At the Sale Hearing, the Debtors shall report the results of the Auction and the Debtors' recommendation with respect to the Prevailing Bid, which is subject to approval of this Court. The Debtors shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing.

(iv)  <u>Highest and/or Best Bid</u>. At all times during the Proposed Sale Process, the Debtors shall retain the right to determine, in their reasonable discretion, which bid constitutes the highest or otherwise best offer for the purchase of the Assets, and which bid should be selected as the Prevailing Bid, if any, all subject to final approval by the Court pursuant to the provisions of Section 363(b) of the Bankruptcy Code. Without limiting the generality of the foregoing, the Debtors may, at any time before entry of an order of the Court approving a Prevailing Bid, reject any bid (other than the SELAF bid, as reflected in the Agreement) that, in the Debtors' reasonable discretion, the Debtors determine is (i) inadequate or insufficient, (ii) contrary to the requirements of the Bankruptcy Code or the

5

    Proposed Sale Process, (iii) from a bidder that does not have substantial community development, sales and management experience for projects that are substantially similar to the Business (including the Club and the Development), or (iv) otherwise contrary to the best interests of the Debtors, their estates or their creditors.

  (i) <u>Sale Implementation</u>.  Following the approval of the Prevailing Bid at the Sale Hearing, the Debtors will be authorized and directed to take all commercially reasonable and necessary steps to complete and implement the transaction(s) contemplated by the Prevailing Bid, including (but not limited to) seeking entry of one or more Sale Orders.

  2. Objections (if any) to approval of any Prevailing Bid or to approval of any proposed sale of the Assets, or any proposed assumption and assignment of executory contracts and unexpired leases (including as to Cure Costs) pursuant to any Prevailing Bid, shall be in writing, shall set forth the name of the objecting party, the basis for the objection and the specific grounds therefor, and shall be filed with the Court and served upon each of the following so as to be actually received on or before 5:00 p.m. on April 12, 2010: (i) Lake Burton Development, LLC, Waterfall Country Club, LLC and Waterfall Water & Sewer, Inc., 300 Lester Mill Road, Suite 110, Locust Grove, Georgia 30248, Attention: J. T. Williams, Jr. (Facsimile: (770) 389-2010), (ii) counsel to the Debtors, George M. Geeslin, Eight Piedmont Center, Suite 550, 3525 Piedmont Road, N.E., Atlanta, Georgia 30305-1565 (Facsimile: (404) 816-1108), (iii) counsel to SELAF, King & Spalding LLP, 1180 Peachtree Street, Atlanta, Georgia 30309, Attention: Paul Ferdinands, Esq. (Facsimile: (404) 572-5100), and (iv) Office of the U.S. Trustee, 362 Richard Russell Bldg., 75 Spring Street, SW, Atlanta, Georgia 30303, Attention: James H. Morawetz (Facsimile: (404) 331-4464).  Any objection not filed and served in accordance with this paragraph 2 shall be deemed waived and shall be forever barred.

  3. The failure of any third party to file and serve an objection as ordered and directed herein shall be deemed the consent of such party to the granting of the Motion and the

sale and transfer of the Assets (including the assumption and assignment of executory contracts and unexpired leases, including applicable Cure Costs, under the Prevailing Bid).

    4.    Except as expressly modified below, the provisions of Section 8.2 of the Agreement are hereby approved and shall be binding on the Debtors, and their estates, creditors and other stakeholders.  Without limiting the generality of the foregoing, the Debtors are authorized to pay to SELAF an amount equal to $500,000 (the "Breakup Fee"); provided, however, that such Breakup Fee shall be due and payable only if (a) the Debtors shall have consummated a sale or other transfer of all or a material portion of the Assets to a person other than SELAF, (b) the Court shall have entered an order in the Debtors' bankruptcy cases confirming a plan of reorganization or liquidation for any of the Debtors which does not provide for a sale of the Assets to SELAF, or (c) the Debtors shall have failed to conduct the Auction or the sale process in material compliance with the Bid Procedures or if the Bid Procedures shall have been changed materially to the detriment of SELAF, in each case without SELAF's prior written consent thereto; provided, further, that no Breakup Fee shall be due and payable by the Debtors in the event that a material breach by SELAF of any representation or warranty contained in the Agreement shall have occurred or SELAF fails to perform and comply with all of its covenants and agreements under the Agreement, which breach or failure, as applicable, results in a valid termination of the Agreement by the Debtors.  In addition, if there shall have occurred a material breach by the Debtors of any covenant, agreement, representation or warranty contained in the Agreement which results in a valid termination of the Agreement by SELAF, then SELAF shall have the right to recover from the Debtors for all damages caused by such breach and/or termination (including, without limitation, all out of pocket expenses incurred by SELAF in connection with or relating to the transactions contemplated by the Agreement).

7

5. In the event that the Breakup Fee is payable pursuant to clause (a) of the preceding paragraph, (a) the Breakup Fee shall be paid out of the sale proceeds received from a sale of Assets to such third party, and (b) no lien of any third party shall attach to the portion of the sale proceeds representing the Breakup Fee.

6. If the Breakup Fee becomes due and payable, it shall be paid to SELAF (without further order of the Court) within three (3) days of the event triggering payment of the Breakup Fee and shall be treated as an allowed administrative expense claim in the Debtors' bankruptcy cases.

7. The Bid Procedures (including the Breakup Fee) are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Assets, and will confer actual benefits upon the Debtors' estates. The Bid Procedures (including payment of the Breakup Fee, if applicable) represent an exercise of the Debtors' sound business judgment and will facilitate an orderly sale process.

8. The provisions of Section 3.8 of the Agreement are hereby approved and shall be binding upon the Debtors and their estates, creditors and other stakeholders. Without limiting the generality of the foregoing, the Debtors shall not spend, transfer or use any membership dues, fees or deposits received from Club members for the 2010 calendar year except in strict compliance with the provisions of Section 3.8 of the Agreement.

9. The Debtors shall serve a copy of this Order as contemplated in the Motion.

**[END OF DOCUMENT]**

Prepared and presented by:

/S/George M. Geeslin
George M. Geeslin
Attorney for Debtors
Georgia Bar No. 288725
Eight Piedmont Center, Suite 550
3525 Piedmont Road, N.E.
Atlanta, GA 30305-1565
Phone (404) 841-3464
Fax (404) 816-1108

**DISTRIBUTION LIST**

James H. Morawetz, Esq.
United States Trustee's Office
362 Richard B. Russell Bldg.
75 Spring Street, S.W.
Atlanta, Georgia  30303

Leon S. Jones, Esq.
Jones & Walden, LLC
21 Eighth Street, N.E.
Atlanta, Georgia  30309

Paul K. Ferdinands, Esq.
King & Spalding, LLP
1180 Peachtree St., N.E.
Atlanta, Georgia  30309-3521

Paul G. Durdaller, Esq.
Taylor English Duma, LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia  30339

Stephen C. Greenberg, Esq.
Holt Ney Zatcoff & Wasserman, LLP
100 Galleria Parkway, Suite 600
Atlanta, Georgia  30339-5947

Wendy L. Hagenau, Esq.
Bryan Cave Powell Goldstein, LLP
1201 W. Peachtree St., N.W., 14th Fl.
Atlanta, Georgia  30309-3488

George M. Geeslin, Esq.
Eight Piedmont Center, Suite 550
3525 Piedmont Road, N.E.
Atlanta, Georgia  30305-1565