**IT IS ORDERED as set forth below:**

**Date: April 13, 2010**

_____
**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **LAKE BURTON DEVELOPMENT, LLC;** | ) | **Case No. 09-22830 (PWB)** |
| **WATERFALL COUNTRY CLUB, LLC; and** | ) | **Case No. 10-21133 (PWB)** |
| **WATERFALL WATER AND SEWER, INC.** | ) | **Case No. 10-21134 (PWB)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | ) | |

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365 OF THE BANKRUPTCY**
**CODE (A) APPROVING PURCHASE AND SALE AGREEMENT AND AUTHORIZING**
**THE SALE OF ASSETS OF THE DEBTORS OUTSIDE THE ORDINARY COURSE**
**OF BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR**
**OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (C) AUTHORIZING**
**THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") (docket no. 106) of Lake Burton Development, LLC

("LBD"), Waterfall Country Club, LLC ("WCC") and Waterfall Water and Sewer, Inc.

("Waterfall Water," and collectively with LBD and WCC, the "Debtors") for entry of an order

(a) authorizing and approving the Purchase and Sale Agreement, dated as of March 17, 2010 (as

amended and modified by this Order, the "Agreement"),[1] by and among the Debtors and SELAF

Waterfall Holding Co., LLC (SELAF Waterfall Holding Co., LLC and its successors, assigns

and designees are referred to collectively as "Purchaser"), (b) authorizing the Debtors to sell

substantially all of their assets (as defined in the Agreement, the "Purchased Assets") to

Purchaser free and clear of any and all Liens (as defined below), with such sale to be in

accordance with the terms and conditions of the Agreement, (c) authorizing the Debtors to

assume and assign certain Assumed Contracts to Purchaser, and (d) granting certain related

relief; and this Court having held a hearing on March 30, 2010 (the "Bid Procedures Hearing")

related to the Debtors' proposed sale process and bidding procedures for the Purchased Assets;

and this Court having entered an order on April 1, 2010 (the "Bid Procedures Order") (docket no.

130) approving the bid procedures (as attached to the Bid Procedures Order, the "Bid

Procedures"), authorizing the Debtors to conduct, and approving the terms and conditions of, the

auction as set forth in the Bid Procedures (the "Auction") to consider higher or otherwise better

offers for the Purchased Assets, establishing a date for the Auction, approving the form and

manner of notice of the Auction and Bid Procedures, and approving the Breakup Fee; and the

Bid Procedures, the Motion and notice of the final hearing regarding the Motion (the "Sale

Hearing") having been served on (i) the Internal Revenue Service and all other appropriate state

and local taxing authorities; (ii) any parties who previously expressed serious interest in

acquiring all or substantially all of the Purchased Assets; (iii) counsel to the Debtors' prepetition

secured lenders; (iv) all entities having requested notices pursuant to Bankruptcy Rule 2002; (v)

the Office of United States Trustee for the Northern District of Georgia; (vi) all non-debtor

parties to the Assumed Contracts; (vii) all parties known by the Debtors to assert a Lien in the

---

[1] Capitalized terms used but not defined in this Order shall have the meanings given to such
terms in the Agreement.

Assets; (viii) all governmental authorities exercising jurisdiction with respect to environmental matters affecting or relating to the Purchased Assets; and (ix) the twenty largest unsecured creditors of each Debtor; and this Court having held a status conference on April 1, 2010 (the "Status Conference") regarding the relief sought by the Debtors in the Motion; and this Court having held a preliminary hearing on April 7, 2010 to consider certain legal issues relating to the Motion (the "Preliminary Hearing," and collectively with the Bid Procedures Hearing, the Status Conference and the Sale Hearing, the "Approval Hearings"), including certain objections to the Motion made by Lake Burton Civic Association, Inc. ("LBCA") and Mountain Valley Community Bank ("MVCB"); and the Sale Hearing having been held on April 13, 2010; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and in consideration of the Motion, the relief requested therein, and the responses and/or objections thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearances of all interested parties and all responses and objections to the Motion having been duly noted in the record of the Approval Hearings; and upon the record of the Sale Hearing, the other Approval Hearings and all other pleadings and proceedings in these cases, including the Motion; and it appearing that the relief requested in the Motion is in the best interest of the Debtors, their estates, their creditors, their stakeholders (including members of the Club) and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[2]

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The Court has jurisdiction over the Motion, the property of the Debtors, including the Purchased Assets to be sold, transferred or conveyed pursuant to the Agreement, the Debtors' respective estates and the transactions contemplated by the Agreement and any ancillary document contemplated by the Agreement (collectively, the "Transactions") pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.    The statutory predicates for the relief sought in the Motion are Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.

E.    As evidenced by the certificates of service previously filed with the Court, (i) proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Hearing, the terms and conditions of the Agreement, the assumption and assignment of the Assumed Contracts, and all of the other Transactions has been provided in accordance with Sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and in compliance with the Bid Procedures Order, (ii) such notice was good,

---

[2] This Court enters this Order in the context of findings of fact and conclusions of law announced by the Court at the Approval Hearings held in these cases, and they are hereby incorporated into this Order to the extent not inconsistent herewith.

sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the terms and conditions of the Agreement, the sale of the Purchased Assets, or of the assumption and assignment of any of the Assumed Contracts is or shall be required.

F.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and the other Approval Hearings, and (ii) the representations of counsel made on the record at the Sale Hearing and the other Approval Hearings, Debtors and their professionals have marketed the Purchased Assets and conducted the sale process with respect thereto in compliance with the Bid Procedures and the Bid Procedures Order.

G.      Through marketing efforts and a competitive sale process, including (i) the marketing of the Purchased Assets by the Debtors prior to the entry of the Bid Procedures Order, and (ii) seeking competing offers for the Purchased Assets through notice of the Motion and pursuant to the Bid Procedures set forth in the Bid Procedures Order, the Debtors and their professionals afforded interested potential purchasers a full, fair, and reasonable opportunity to make an offer to purchase the Purchased Assets.

H.      The Bid Procedures were non-collusive, substantively and procedurally fair to all parties, and were the result of arm's length negotiations between the Debtors and Purchaser.

I.      The Debtors and their professionals complied in all respects with the Bid Procedures Order. Purchaser was a Qualified Bidder and no Initial Overbid was received prior to the Overbid Deadline. Therefore, in accordance with the Bid Procedures, the Agreement was deemed to constitute the highest and best bid for the Purchased Assets and the Auction was not held. The Bid Procedures resulted in the highest value obtainable for the Purchased Assets for the Debtors and their estates.

- 5 -

J.      The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

K.      The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring them to enter into the Agreement, sell the Purchased Assets, and assume and assign the Assumed Contracts under Bankruptcy Code §§ 363 and 365, and such actions are appropriate exercises of the Debtors' business judgment and are in the best interests of the Debtors, their estates, their creditors and their other stakeholders.

L.      The Debtors (i) have full power and authority to execute the Agreement and all other documents contemplated thereby (collectively, the "Sale Documents"), and the sale of the Purchased Assets by the Debtors has been duly and validly authorized by all necessary actions of the Debtors, (ii) have all of the power and authority necessary to consummate the Transactions, and (iii) have taken all corporate and/or limited liability company action necessary to authorize and approve the Sale Documents and the consummation by the Debtors of the Transactions contemplated thereby.  No consents or approvals, other than as set forth in this Order, or as expressly provided for in the Agreement, are required for the Debtors to consummate the Transactions.

M.      The Debtors have demonstrated and proved to the satisfaction of this Court good, sufficient, and sound business purposes and justifications for the sale of the Purchased Assets and consummation of the Transactions contemplated by the Agreement and this Order, pursuant to Section 363(b) of the Bankruptcy Code.  Entry into the Agreement and consummation of the Transactions constitute the exercise by the Debtors of sound business judgment and such acts are in the best interests of the Debtors, their estates, their creditors, and their other stakeholders.  The business reasons justifying the sale of the Purchased Assets include, but are not limited to, the

facts that (i) the Agreement constitutes the highest and best offer for the Purchased Assets;

(ii) the Agreement and the consummation of the Transactions will present the best opportunity to

realize the fair value of the Purchased Assets; and (iii) the consideration provided by Purchaser

for the purchase of the Purchased Assets pursuant to the Sale Documents exceeds what the

Debtors would be able to realize in a separate liquidation of the Purchased Assets.

N.    The Agreement must be approved and consummated promptly because there is a

significant risk that the value of the Purchased Assets would deteriorate before the effective date

of a confirmed plan of reorganization or liquidation in the Debtors' cases.

O.    Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are

defined in the Bankruptcy Code and the decisions thereunder.  Purchaser is a purchaser in "good

faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled

to the protections of Bankruptcy Code §§ 363(m) and (n) with respect to all of the Purchased

Assets.  The Agreement was negotiated and entered into in good faith, based upon arm's length

bargaining, and without collusion or fraud of any kind.  Neither the Debtors nor Purchaser has

engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or

cause the application of, or implicate, Bankruptcy Code § 363(n) to the Agreement or to the

consummation of the Transactions and transfer of the Purchased Assets (including the Assumed

Contracts) to Purchaser.  Purchaser is purchasing the Purchased Assets (including the Assumed

Contracts) in good faith and is a good faith purchaser within the meaning of Bankruptcy Code §

363(m) and is, therefore, entitled to the protection of that provision, and otherwise has proceeded

in good faith in all respects in connection with this proceeding in that: (i) Purchaser recognized

that the Debtors were free to deal with any other party interested in acquiring the Purchased

Assets, (ii) Purchaser complied with the provisions in the Bid Procedures Order, (iii) all

consideration to be paid by Purchaser and other agreements or arrangements entered into by

Purchaser in connection with the sale have been disclosed, (iv) Purchaser has not violated

Bankruptcy Code § 363(n) by any action or inaction, and (v) the negotiation and execution of the

Agreement and any other agreements or instruments related thereto was in good faith.

    P.  The aggregate consideration provided by Purchaser for the Purchased Assets

pursuant to the Sale Documents (i) is fair and reasonable, (ii) is the highest and best offer for the

Purchased Assets, (iii) constitutes full and fair consideration and reasonably equivalent value for

the Purchased Assets, and (iv) will provide a greater recovery for the Debtors' creditors,

stakeholders and other interested parties than would be provided by any other practically

available alternative. The terms and conditions of each of the Sale Documents are fair and

reasonable. Therefore, the sale contemplated by the Agreement is in the best interests of the

Debtors and their estates, creditors, stakeholders and other parties in interest and is an exercise of

their sound business judgment. In addition, the relief requested in the Motion (including the

approval of the Sale Documents, the sale of the Purchased Assets, and the other Transactions) is

a necessary and appropriate step toward enabling the Debtors to successfully conclude these

chapter 11 cases and is otherwise in the best interests of the Debtors, their creditors, their

stakeholders, their estates, and all other parties in interest in these cases.

    Q.  A reasonable opportunity to object or be heard regarding the relief requested in

the Motion has been afforded to all interested persons and entities (including all holders of Liens

and all nondebtor parties to the Assumed Contracts).

    R.  The Purchased Assets shall be sold, assigned or otherwise transferred to Purchaser

free and clear of any and all liens (statutory or otherwise, including mechanics', materialman's

and other consensual and non-consensual liens and statutory liens), Claims (as that term is

defined in Section 101(5) of the Bankruptcy Code), indebtedness, liabilities, demands, guaranties, hypothecations, encumbrances, obligations, security interests, interests, mortgages, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), charges, instruments, preferences, priorities, security agreements, easements, covenants, community property interests, deeds of trust, purchase rights, servitudes, encroachments, conditional sales agreements, title retention contracts, options, leases, licenses, rights of recovery, rights of setoff, rights of pre-emption, rights of first refusal or other third party rights, reclamation claims, judgments, contracts, recoupments, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego liability, environmental liability or taxes (including Claims for any and all federal, state and local taxes), orders or decrees of any governmental authority or entity, or other restriction or limitation, of any kind or nature whatsoever (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, and (iii) any Claim based on any theory that Purchaser is a successor or a continuation of the Debtors or the business or operations conducted by Debtors), in each case, whether known or unknown, secured or unsecured, perfected or unperfected, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non material, allowed or disallowed, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including Claims otherwise arising under theories of successor liability (collectively, "Liens"), other than Permitted Liens and Assumed Liabilities.

S.      Purchaser would not have entered into the Agreement and would not consummate the Transactions contemplated thereby, thus adversely affecting the Debtors, their estates, their creditors and their other stakeholders, if the sale of the Purchased Assets to Purchaser (including the assignment of the Assumed Contracts) were not free and clear of all Liens of any kind or nature whatsoever (other than Permitted Liens and Assumed Liabilities), or if Purchaser would, or in the future could, be liable for any of the Liens, either directly or as a successor to the Debtors.

T.      The Debtors may sell the Purchased Assets free and clear of any and all Liens of any kind or nature whatsoever (except for Assumed Liabilities and Permitted Liens) because, in each case, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Specifically, each entity with a security interest in any of the Purchased Assets has consented to their sale, is deemed to have consented to their sale, will receive a cash payment equal to or greater than the value of such interest, could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest, or the sale of the Purchased Assets otherwise satisfies the requirements of Section 363(f) of the Bankruptcy Code.  To that end, all parties with Liens in the Purchased Assets who did not object, or who withdrew their objections, to the Agreement or the Motion are deemed to have consented to such sale pursuant to Sections 363(f)(2) and 365 of the Bankruptcy Code.  All parties with Liens in the Purchased Assets who did object fall within one or more of the other subsections of Sections 363(f) and 365 of the Bankruptcy Code and are adequately protected by having their Liens, if any, attach to the cash proceeds of the Transactions ultimately attributable to the property against or in which they assert a Lien with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors and/or other parties in interest possess with respect thereto.  All

- 10 -

objections to the Motion have been overruled, withdrawn, resolved or addressed pursuant to the terms of this Order.

U.    The transfer of the Purchased Assets to Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and such transfer shall vest Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of any and all Liens (other than Permitted Liens and Assumed Liabilities).  Purchaser shall not assume (and shall not be deemed to have assumed) or be liable for any Liens (other than Permitted Liens and Assumed Liabilities) relating to the Purchased Assets being sold by the Debtors.

V.    All persons having Liens of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens (other than Permitted Liens and Assumed Liabilities) against Purchaser, any of its assets or property, or the Purchased Assets.

W.    Not selling the Purchased Assets free and clear of any and all Liens (other than Permitted Liens and Assumed Liabilities) would adversely impact the Debtors' estates, and any sale of Purchased Assets other than one free and clear of any and all Liens (other than Permitted Liens and Assumed Liabilities) would be of substantially less value to the Debtors' estates.

X.    The Debtors and Purchaser have, to the extent necessary, satisfied the requirements of Bankruptcy Code § 365, including Bankruptcy Code §§ 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assumed Contracts. Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to Bankruptcy Code §§ 365(b)(1)(C) and (f)(2)(B).  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors

and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

Y.      The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary.  The Debtors shall have sole responsibility for paying all Cure Amounts required to assume and assign the Assumed Contracts to Purchaser, with such amounts to be paid to the third parties to the Assumed Contracts at or promptly following the Closing.  That certain Notice of Filing of Amended Assumed Contracts Schedule filed with the Court on April 8, 2010 (the "Amended Contracts Schedule") (docket no. 137) sets forth a true and correct list of all Assumed Contracts and the Cure Amounts related thereto.

Z.      Approval of the Sale Documents, approval of the assumption, assignment, and sale of the Assumed Contracts, and consummation of the sale of the Purchased Assets at this time are in the best interests of the Debtors, their creditors, their other stakeholders, their estates, and other parties in interest.

AA.      Time is of the essence in closing the Transactions, and the Debtors and Purchaser intend to close the sale of the Purchased Assets and the other Transactions as soon as possible after entry of this Order (subject to the provisions of Paragraph 38 below).

BB.      In the absence of a stay of this Order, Purchaser will be acting in good faith, pursuant to Bankruptcy Code § 363(m), in closing the Transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why any stay of this Order that would otherwise be applicable pursuant to Bankruptcy Rules 6004(h) and 6006(d) should be shortened as set forth in Paragraph 38 below.

CC.      The transactions contemplated under the Agreement do not amount to a consolidation, merger, or *de facto* merger of Purchaser and the Debtors and/or the Debtors'

- 12 -

estates, there is not substantial continuity between Purchaser and the Debtors, there is no

continuity of enterprise between the Debtors and Purchaser, Purchaser is not a mere continuation

of the Debtors or their estates, and Purchaser does not constitute a successor to the Debtors or

their estates.

DD.    The total consideration provided by Purchaser for the Purchased Assets was the

highest or best offer received by the Debtors, and the purchase price to be paid by Purchaser (the

"Purchase Price") constitutes (i) reasonably equivalent value under the Bankruptcy Code and the

Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent

Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under

any other applicable laws of the United States, any state, territory or possession, or the District of

Columbia, for the Purchased Assets.

EE.    United Community Bank ("UCB") asserts a Lien on certain of the Purchased

Assets that secures the Debtors' obligations under various loans from UCB to the Debtors and

other affiliated entities (the "Affiliated Entities") in an original principal amount equal to

$23,746,759.00.  At the Closing, UCB shall receive a cash payment of $8,400,000 in full,

complete and final satisfaction of any and all Liens held by UCB on or against any of the

Purchased Assets; provided, however, that this Order is not intended, and shall not be deemed, as

a full, complete and final satisfaction of any and all indebtedness or Liens held by UCB on or

against the Debtors, the Affiliated Entities, any other obligors or their assets (except for the

Purchased Assets), including any remaining portion of the Current Assets Escrow (together with

all investment income or interest thereon) after payment of any amounts to Purchaser in

accordance with the Agreement.  UCB expressly reserves and retains any and all rights, powers

and remedies which it may have to enforce collection of such indebtedness against the Debtors,
the Affiliated Entities, any other obligors or their assets (except for the Purchased Assets).

   FF.  State Mutual Insurance Co. ("State Mutual") asserts, on its behalf and on behalf
of the other participants under the State Mutual Loan (as defined below), a Lien on certain of the
Purchased Assets that secures the Debtors' obligations under a loan from State Mutual (as
assignee) to the Debtors in the original principal amount of $8,012,500 (the "State Mutual
Loan").  At the Closing, State Mutual shall receive a cash payment in an amount equal to
$1,500,000 (the "State Mutual Payment") in full, complete and final satisfaction of any and all
Liens asserted by State Mutual on or against any of the Purchased Assets.

   NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY
ORDERED, ADJUDGED AND DECREED THAT:

   1.  The relief requested in the Motion (docket no. 106) is granted in its entirety,
subject to the terms and conditions contained herein.

   2.  Any and all objections, responses and requests for continuances concerning the
Motion (whether formal or informal, written or oral, made on the record at an Approval Hearing
or otherwise) are resolved in accordance with the terms of this Order and as set forth in the
record of the Sale Hearing and the other Approval Hearings.  To the extent any such objections
or responses were not otherwise withdrawn, waived, settled, or addressed pursuant to the terms
of this Order, all such objections, and all reservations of rights or relief requested therein, are
hereby overruled on the merits and denied with prejudice.

   3.  Without limiting the generality of paragraph 2, any and all objections to the
Motion raised or otherwise asserted by MVCB are overruled on the merits pursuant to the terms
and conditions of this Order.  MVCB was not the proper party to assert an objection to the

- 14 -

Motion because State Mutual was the agent authorized to act on behalf of MVCB with respect to the State Mutual Loan.  However, this Court nonetheless entertained and addressed MVCB's objection to the Motion and overruled it on the merits.  The sale of the Purchased Assets shall be free and clear of any and all Liens asserted or held by MVCB pursuant to the provisions of Sections 363(f)(1), (2) (due to the deemed consent of State Mutual to the entry of this Order), (3) and (5) of the Bankruptcy Code.

4.      Without limiting the generality of paragraph 2, any and all objections to the Motion raised or otherwise asserted by LBCA are resolved on the merits pursuant to the terms and conditions of this Order.  Effective as of the date of entry of this Order, the Settlement Agreement by and among LBCA, LBD, WCC, Killearn, Inc., J. T. Williams, Bert Williams and David Williams and relating to the litigation pending in the United States District Court, Northern District of Georgia (Gainesville Division), under Case No. 2:06-CV-0189-WCO (as amended, modified or supplemented to date, the "Settlement Agreement"), is rejected by LBD and WCC pursuant to Section 365 of the Bankruptcy Code.  Notwithstanding any other provision of this Order:  (a) the sale of the Purchased Assets shall be free and clear of any and all Liens asserted or held by LBCA pursuant to, among others, the provisions of Section 363(f)(5) of the Bankruptcy Code; and (b) the provisions of this Order (i) shall not affect any obligation of Purchaser (A) arising from and after the Closing, (B) caused by any continuing or future violations by Purchaser of the Federal Clean Water Act, 33 U.S.C. § 1251, *et seq.* ("CWA"), (C) relating to any such post-Closing violations, and (D) that is not based on a theory of successor liability, vicarious liability, substantial continuity, continuity of enterprise, transferee liability, *de facto* merger or other similar or analogous theory, and (ii) shall not enjoin LBCA from pursuing

any rights it may have under the CWA in the event of such continuing or future violations by Purchaser of the CWA.

5.      Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, and 6006.

6.      The sale of the Purchased Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), the Sale Documents, all of the terms and conditions thereof, and the Transactions contemplated thereby, are hereby approved in all respects.

7.      Pursuant to Section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under, and to comply with the terms of, the Sale Documents, and to consummate the sale of the Purchased Assets and the other Transactions pursuant to, and in accordance with, the terms and conditions of the Agreement and related Sale Documents.

8.      The Debtors are authorized and directed to execute, deliver, perform under, consummate, and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and the Debtors are authorized and directed to take any and all further actions as may be reasonably requested by Purchaser and provided for in (or contemplated by) the Agreement for the purpose of assigning, transferring, granting, conveying, and conferring to Purchaser or reducing to possession, the Purchased Assets, or as may be necessary, desirable or appropriate in connection with the performance by the Debtors of their obligations under the Agreement and related Sale Documents.  Pursuant to the terms of the Agreement, Purchaser shall have no obligation to

proceed with the Closing of the Agreement until all conditions precedent to its obligations to do so have been met, satisfied or waived.

9.        This Order and the Sale Documents shall be binding in all respects upon all creditors (whether known or unknown) of the Debtors, all nondebtor parties to the Assumed Contracts, all successors, designees and assigns of Purchaser, the Debtors, and their affiliates and subsidiaries, and any subsequent trustee(s) (or other third party, such as a liquidating or disbursing agent) appointed in any of the Debtors' chapter 11 cases or upon a conversion thereof to chapter 7 of the Bankruptcy Code and shall not be subject to rejection.  Nothing contained in any chapter 11 plan confirmed in these bankruptcy cases or in any order of the Court confirming any such chapter 11 plan shall conflict with or modify the rights of Purchaser pursuant to the provisions of the Sale Documents or this Order.

10.        The Sale Documents and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court.

11.        Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, at the Closing and upon consummation of the Transactions, Purchaser shall have and acquire good, valid and marketable title in and to, or a valid leasehold interest in, each of the Purchased Assets, free and clear of any and all Liens of any kind or nature whatsoever, except for Permitted Liens and Assumed Liabilities, with all such Liens of any kind or nature whatsoever (except for Permitted Liens and Assumed Liabilities) to attach to the net proceeds of the sale in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors or any other party in interest may possess with respect thereto.

12.     Notwithstanding any other provision of this Order, all persons and entities, including all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, employees, and other creditors, holding Liens of any kind or nature whatsoever (except for Permitted Liens and Assumed Liabilities) against or in the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing, or the transfer of the Purchased Assets to Purchaser, are forever barred, estopped, and permanently enjoined from asserting against Purchaser, its property, or the Purchased Assets, such persons' or entities' Liens.

13.     The transfer of the Purchased Assets to Purchaser pursuant to the Sale Documents does not require any consents other than as specifically provided for in the Sale Documents and constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of all Liens of any kind or nature whatsoever (except for Permitted Liens and Assumed Liabilities).

14.     If any person or entity that has filed financing statements, mortgages, materialman's liens, mechanic's liens, lis pendens, or other documents or agreements evidencing Liens in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Liens which the person or entity has with respect to the Purchased Assets, then (a) each of the Debtors and Purchaser is authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) Purchaser is authorized to file, register, or

otherwise record a certified copy of this Order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Purchased Assets of any kind or nature whatsoever (except for Permitted Liens and Assumed Liabilities). Moreover, effective as of the Closing, Purchaser shall be designated and appointed the Debtors' true and lawful attorney, with full power of substitution, in the Debtors' names and stead, on behalf of and for the benefit of Purchaser, for any purpose as provided in the Agreement, including for the following purposes:  to demand and receive any and all of the Purchased Assets and to give receipts and releases for and in respect of the Purchased Assets, or any part thereof, and from time to time to institute and prosecute in the Debtors' names, for the benefit of Purchaser, any and all proceedings at law, in equity or otherwise, which Purchaser may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets which Purchaser shall deem desirable.  The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors.

15.    To the greatest extent available under applicable law, Purchaser shall be authorized, as of the Closing, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to Purchaser as of the Closing Date.

16.    All of the Debtors' interests in the Purchased Assets to be acquired by Purchaser under the Agreement shall be, as of and upon the occurrence of the Closing, transferred to and vested in Purchaser.  Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by Purchaser under the Agreement and/or a bill of sale

or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to Purchaser.

17.     On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Liens (other than Permitted Liens) against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

18.     All persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to Purchaser on the Closing Date or at such time thereafter as Purchaser may request.

19.     Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors' assumption, assignment, and sale to Purchaser at the Closing, and Purchaser's acquisition at the Closing on the terms set forth in the Agreement, of the Assumed Contracts are approved and all of the requirements of Section 365 of the Bankruptcy Code with respect thereto are deemed satisfied.

20.     The Debtors are authorized in accordance with Sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser at the Closing, pursuant to the terms set forth in the Agreement, the Assumed Contracts free and clear of all Liens of any kind or nature whatsoever (other than Permitted Liens and Assumed Liabilities); and (b) execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Purchaser at the Closing.

21.     With respect to the Assumed Contracts being transferred to Purchaser at the Closing:  (a) such Assumed Contracts shall be transferred and assigned to, and following the Closing shall remain in full force and effect for the benefit of, Purchaser in accordance with their

respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer; (b) pursuant to Section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to such Assumed Contracts after such assignment to Purchaser, other than the liability of the Debtors to pay all Cure Amounts related thereto; (c) each such Assumed Contract is an unexpired lease or executory contract of the Debtors under Section 365 of the Bankruptcy Code; (d) the Debtors may assume each such Assumed Contract in accordance with Section 365 of the Bankruptcy Code; (e) the Debtors may assign each such Assumed Contract to Purchaser in accordance with Sections 363 and 365 of the Bankruptcy Code, and any provisions in any such Assumed Contract that prohibit or condition the assignment of such Assumed Contract, that require a consent, approval, waiver, notice, or opinion from or to any party, or allow the nondebtor party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are null and void and of no force or effect; (f) all other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Purchaser of each such Assumed Contract have been satisfied; and (g) upon consummation of the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title, and interest of the Debtors in each such Assumed Contract.

22.     At or promptly following the Closing, the Debtors shall pay all Cure Amounts or any other amounts due under Sections 365(b)(1)(A) and (B) of the Bankruptcy Code in connection with the assumption and assignment of the Assumed Contracts by the Debtors to

Purchaser.  The Cure Amounts are hereby fixed at the amounts set forth on the Amended

Contracts Schedule and the non-debtor parties to the Assumed Contracts are forever bound by

such Cure Amounts.

23.    All defaults or other obligations under the Assumed Contracts arising prior to the

Closing (without giving effect to any acceleration clauses, assignment fees, increases, advertising

rates, or any other default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) shall

be deemed cured by payment of the Cure Amounts.

24.    Pursuant to Bankruptcy Code §§ 105(a), 363 and 365, all parties to the

Assumed Contracts are forever barred and enjoined from raising or asserting against Purchaser

any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising

under or related to the Assumed Contracts existing as of the Closing or arising by reason of the

Closing, except for any amounts that are Assumed Liabilities being assumed by Purchaser under

the Agreement.

25.    The consideration provided by Purchaser for the Purchased Assets under the Sale

Documents constitutes reasonably equivalent value and fair consideration under the Bankruptcy

Code and under the laws of the United States, any state, territory, possession, or the District of

Columbia.

26.    The consideration provided by Purchaser for the Purchased Assets under the Sale

Documents is fair and reasonable, and the Transactions may not be avoided under Section 363(n)

of the Bankruptcy Code.

27.    Notwithstanding any other provision in this Order, effective as of the Closing

Date, and in consideration for the payment by Purchaser of the Purchase Price at Closing, each

holder of a Lien or Claim against any one or more of the Debtors shall be deemed to have

- 22 -

released irrevocably Purchaser and its Affiliates for and from any liability or obligation with respect to such Lien or Claim (other than any such Lien or Claim that constitutes a Permitted Lien or an Assumed Liability) and with respect to any and all Excluded Liabilities.

28.    Notwithstanding any other provision in this Order, this Order (a) shall be effective as a determination that on the Closing, all Liens of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated (other than Permitted Liens and Assumed Liabilities), and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

29.    Purchaser shall have no liability with respect to any collective bargaining agreement, employee pension plan, or employee welfare or retention, benefit and/or incentive plan to which any of the Debtors are parties and relating to the Purchased Assets (including arising from or related to the rejection or other termination of any such agreement or plan), and Purchaser shall in no way be deemed a party to or assignee of any such agreement or plan, and no employee of Purchaser shall be deemed in any way covered by or a party to any such agreement or plan, and all parties to any such agreement or plan are enjoined from asserting against Purchaser any and all claims arising from or relating to any such agreement or plan.

30.     Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Agreement.

31.     Except for Permitted Liens and Assumed Liabilities, Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets.  Without limiting the generality of the foregoing, and notwithstanding any other provision of this Order, Purchaser shall not be liable for any Liens against the Debtors or any of their predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, including any such liability that may be imposed by statute (e.g., under so-called "bulk sale" laws or revenue laws) or any theory of antitrust, environmental, successor or transferee liability, labor law, pension law, ERISA, tax, products liability, *de facto* merger, substantial continuity, continuing violations, or continuing activities, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors, the Purchased Assets or any obligations of the Debtors arising prior to the Closing, including liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing.

32.     Under no circumstances shall Purchaser be deemed a successor of or to the Debtors for any Liens (other than Permitted Liens and Assumed Liabilities) against or in the Debtors or the Purchased Assets of any kind or nature whatsoever.  The sale, transfer, assignment and delivery of the Purchased Assets shall not be subject to any Liens, other than Permitted Liens and Assumed Liabilities, and the Excluded Liabilities shall remain with, and continue to be obligations of, the Debtors (subject to any and all rights and defenses of the

- 24 -

Debtors with respect thereto, as debtors in possession under the Bankruptcy Code or otherwise).

Notwithstanding any other provision in this Order, all persons holding Liens against or in the

Purchased Assets of any kind or nature whatsoever other than Permitted Liens and Assumed

Liabilities shall be, and hereby are, forever barred, estopped, and permanently enjoined from

asserting, prosecuting, or otherwise pursuing such Liens of any kind or nature whatsoever

against Purchaser, its property, or the Purchased Assets, as an alleged successor or otherwise,

with respect to any Lien of any kind or nature whatsoever such person or entity had, has, or may

have against the Debtors, their estates, officers, directors, managers, members, shareholders, or

the Purchased Assets.  Following the Closing, no holder of a Lien in any one or more of the

Debtors (other than holders of Permitted Liens and Assumed Liabilities) shall interfere with

Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such

Lien or any actions that the Debtors may take in their chapter 11 cases.

　　　　33.　　This Court retains jurisdiction to enforce and implement the terms and provisions

of the Sale Documents, all amendments thereto, any waivers and consents thereunder, and of

each of the agreements executed in connection therewith in all respects, including retaining

jurisdiction to (a) subject to the terms and conditions of the Sale Documents, compel delivery of

the Purchased Assets to Purchaser or compel performance of other obligations of the Debtors

under the Agreement, (b) compel delivery of the Purchase Price by Purchaser or performance of

other obligations of Purchaser contained in the Sale Documents owed to the Debtors or to other

parties pursuant to the Sale Documents, (c) resolve any disputes arising under or related to the

Sale Documents, except as otherwise provided therein, (d) interpret, implement, and enforce the

provisions of this Order, and (e) protect Purchaser against (i) any of the Excluded Liabilities or

(ii) any Liens in the Purchased Assets (other than Permitted Liens and Assumed Liabilities), of

any kind or nature whatsoever; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Sale Documents or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

34.     The Transactions contemplated by the Sale Documents are undertaken by Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale of the Purchased Assets to Purchaser (including the assumption, assignment, and sale of any of the Assumed Contracts), unless such authorization is duly stayed pending such appeal.  Purchaser is a purchaser in good faith of the Purchased Assets, is not an insider of the Debtors, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

35.     Cause exists under Section 349(b) of the Bankruptcy Code for this Court to find that all transfers of property of the Debtors' estates effected by this Order or the Agreement shall remain valid and effective notwithstanding a subsequent dismissal of these Cases, and Section 349(b)(3) shall not apply to the property of the estates which are the subject of this Order.

36.     The terms and provisions of the Sale Documents and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, their creditors and their other stakeholders; Purchaser and its affiliates; and any affected third parties, including all persons asserting a Lien in the Purchased Assets to be sold to Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other

fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

37.    The failure specifically to include any particular provisions of the Sale Documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Sale Documents be authorized and approved in their entirety.

38.    Time is of the essence in closing the Transactions.  Among other things, the uncontroverted evidence presented at the Sale Hearing established that the Purchaser is not permitted to close the Transactions after April 15, 2010.  Accordingly, the 14-day stay of orders authorizing the (a) use, sale, or lease of property as provided for in Bankruptcy Rule 6004(h), and (b) assignment of an executory contract or unexpired lease as provided for in Bankruptcy Rule 6006(d), shall expire and terminate automatically upon the earliest to occur of the following events (each, a "Stay Termination Event"):  (i) in the event LBCA does not file (A) with this Court a Notice of Appeal with respect to the entry of this Order, and (B) with the District Court a Motion for Stay Pending Appeal with respect to this Order, at or before noon (local time in Atlanta, Georgia) on April 14, 2010, (ii) in the event the District Court denies LBCA's Motion for a Stay Pending Appeal (assuming it is timely filed as contemplated by clause (i) hereinabove), or (iii) at 5:00 p.m. (local time in Atlanta, Georgia) on April 19, 2010.  The Court expressly finds that there is no just reason for delay in the implementation of this Order and that the Closing can occur immediately upon the occurrence of a Stay Termination Event.  The Court considered at the Sale Hearing LBCA's oral Motion for a Stay Pending Appeal with respect to this Order and denied such Motion on the grounds that any appeal to be pursued by LBCA would not likely be successful on the merits.  This Court respectfully requests that, in the event LBCA

Case 09-22830-pwb    Doc 142    Filed 04/13/10    Entered 04/13/10 17:31:51    Desc Main
Document    Page 28 of 30

files with the District Court a Motion for a Stay Pending Appeal with respect to this Order at or before noon on April 14, 2010, the District Court rule on LBCA's Motion for a Stay Pending Appeal on an expedited basis so as to permit the Closing of the Transactions to occur on or before April 15, 2010.

39.    Pursuant to Section 105 and 525 of the Bankruptcy Code, and in order to preserve the going concern value of the Purchased Assets, no governmental unit, agency, department or authority may revoke or suspend any permit or license relating to the operation of the Purchased Assets on account of the filing or pendency of these chapter 11 cases or on account of the Closing of the Transactions.  To the extent any governmental unit, which has issued a License or Permit relating to the Purchased Assets or the operation of the business associated with the Purchased Assets, has not objected to the sale of the Purchased Assets or to the entry of this Order, such governmental unit is deemed to have consented to the transfer of such License or Permit to Purchaser at the Closing.  Notwithstanding any other provision of this Order or the Agreement, to the extent that any Licenses or Permits necessary, appropriate or otherwise needed for the operation of the business associated with Purchased Assets will not be transferred to Purchaser at the Closing, Purchaser is authorized to use (as the Debtors' beneficiary or licensee) the Licenses and Permits currently held by the Debtors so that Purchaser may operate the business associated with the Purchased Assets from and after the Closing.

40.    This Order constitutes this Court's approval of the Transactions.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

41.     The terms and provisions of this Order are mutually dependent and will be relied

upon by the parties in Closing the Transactions and, therefore, the provisions of this Order are

not severable.

42.     As such terms are used in this Order, the terms "including" or "include" are not

limiting and mean "including, without limitation" or "include, without limitation."

43.     As agreed to by the Debtors and Purchaser, the Agreement is hereby modified as

follows:  (a) the term "Excluded Assets" shall include the two (2) condominium units located at

Waterfall Villas that constitute a portion of the collateral for the State Mutual Loan (the "State

Mutual Condos"), (b) in consideration of the State Mutual Payment, any and all Liens of State

Mutual in and to the Purchased Assets shall be deemed released and discharged, and the State

Mutual Payment shall be applied to State Mutual's claims against the Debtors (and any

unsatisfied portion of such claims shall remain outstanding), (c) the term "Permitted Liens" shall

include all existing, recorded easements granting ingress, egress, road and other access over and

through the Purchased Assets for the benefit of the State Mutual Condos and of all other

condominium units, common areas, land and improvements constituting the Waterfall Villas

Condominium, and (d) from and after the Closing, the owner(s) of the State Mutual Condos and

of all other condominium units, common areas, land and improvements constituting the

Waterfall Villas Condominium shall have access to the utility services currently being provided

to the State Mutual Condos and to all other condominium units, common areas, land and

improvements constituting the Waterfall Villas Condominium (including water and sewer

service), subject to the obligation of the owner(s) of the State Mutual Condos and of all other

condominium units, common areas, land and improvements constituting the Waterfall Villas

Condominium to pay (in full and in a timely manner) any and all utility charges, fees and other

amounts that become due and payable with respect to such utility services; provided, however, that this provision is intended to confirm, and not to limit, the rights of the owner(s) of the State Mutual Condos and of all other condominium units, common areas, land and improvements constituting the Waterfall Villas Condominium pursuant to the recorded easements granting such owner(s) a non-exclusive, perpetual easement for the use, maintenance and repair of the water and sewer system and lines serving such property and adjacent property.

44.     As agreed to by the Debtors and Purchaser, the Agreement is hereby further modified as follows:  the term "Excluded Assets" shall include any avoidance actions arising under chapter 5 of the Bankruptcy Code, but only to the extent such avoidance actions are or may be asserted against an "insider" or "affiliate" (as such terms are defined in the Bankruptcy Code) of one or more of the Debtors.

45.     As agreed to by the Debtors and Purchaser, the Agreement is hereby further modified as follows:  the term "Permitted Liens" shall include that certain Declaration of Covenants, Conditions and Restrictions for Waterfall at Lake Burton dated April 16, 1999 and recorded at Book B-19, Pg 598 Rabun County Clerk records, as may be amended from time to time, but this Order is not a determination that the Declaration is a lien, claim or other interest from which the Purchased Assets may be sold free and clear.

46.     As permitted by the terms of the Agreement, the Debtors are hereby authorized to pay at the Closing any fees and expenses, which do not constitute fees or expenses owed to a professional person as set forth in Section 330(a) of the Bankruptcy Code, incurred by the Debtors in connection with the filing of the Motion, seeking approval of the relief set forth therein (including the approval of the Bid Procedures), or the Closing of the Transactions.

**[END OF DOCUMENT]**